Good morning. Terry Collins on behalf of the appellant of the Orland Firefighters' Protection District Fire Pension Board. Your Honor, this case is in front of you as the board rendered its decision. Are you reserving any time for rebuttal? Pardon? Are you reserving any time for rebuttal? No. Yes, Your Honor. How much? Two minutes would be fine. All right. Please proceed. Your Honor, we like to believe that this is a very straightforward case. Literally, the pension board followed the statute, the applicable statute. That is, it had the individual in this case examined annually. There was a skip in the period of time because of different issues with regard to the appellee in this case because of the fact that at different times he objected to the examination. There were problems with having tests done. In 2009, the board had him examined by Dr. Martin Lanoff, a physiatrist, a recognized discipline in the medical field. And at that point in time, Dr. Lanoff found that the individual was no longer disabled. The fact is that in his language, he apparently said, however, reviewing the medicals, because he never examined him initially, he said, I don't think he was ever disabled. That was his opinion. That was contrary to what the appellee is arguing here in this case. Why do you think Dr. Lanoff went beyond what was necessary? Your Honor, having dealt with him, at times he gets a little cynical and sarcastic, especially when he finds fault with someone's allegation. Let's examine that at face value, that Dr. Lanoff decided he was never disabled to begin with. What kind of exam do you think he engaged in to determine that the officer was now recovered? Dr. Lanoff reviews the medical records by all the doctors who have examined him, as well as any tests, including MRIs. In this case, it's specifically important because of the fact that there's not herniation or any type of pressure or any type of issues with regard to an objective test finding. So it sounds like to me you're saying that Dr. Lanoff's conclusion that he was now able to return to his employment was based on the absence of the injury itself as opposed to recovery.  And doesn't the statute require recovery to halt pension benefits? Well, Your Honor, we're becoming wordsmiths when we say recovery. The statute itself is determined to be an anti-fraud statute. Someone could obtain this. But the anti-fraud statute is embedded in the annual review, isn't it? Yes, it is, Your Honor. It doesn't convey the right to a second bite at the disability determination that was made by this board some years ago. And really, that's my question. The situation that you're presenting us with, how do you distinguish this situation from a second bite at the pension? Well, Your Honor, if you take that at face value, and you say it's a second bite, that means every time we do the annual examination, it's a second bite at the apple. No, Your Honor. It's only a second bite at the apple if you want to challenge what the board determined at the initial, in its initial pension determination. If it said he's disabled, and then later on through efforts and through medical surgeries or other means, he is no longer disabled, then of course, and that's why there's an annual review, to ensure that person continues. But you can't simply say, you can't base your decision that pension benefits should be halted because he was never disabled to begin with if there's any finality, if there's any deference to be given to the original decision. And isn't that what the trial judge said? Actually, yes, Your Honor. The court misapplied the O'Brien case. In the O'Brien case, the facts are completely different than the incident. Well, let's address a more basic question. You have, you raise issues regarding the manifest weight of the evidence. You are clearly erroneous. And I think counsel in his brief talks about as a matter of law. And so the initial question is, what are we addressing here? A question of law or an evidentiary or the sufficiency of the evidence sort of question? And the other question relating to that is, when the evidence is so lacking, doesn't the decision turn as if it were a matter of law? Because there isn't any. Well, Your Honor, there's also the question of who has the burden? Upon whom does the burden fall? Well, why don't we address that? The burden falls upon the applicant himself. Does it? To show that he still remains disabled. If not, he has recovered from whatever the problem was. So recovery is a default position? That if he hasn't presented any evidence that he's still disabled, then he's automatically returned to his appointment? Well, he does, in fact, Your Honor, with the annual examinations. Does he say, hey, I want to be examined again annually? Who decides? He's required to do it by statute. But who decides? Because, in fact, you just referred to the absence of that annual examination because there was some dispute. And you certainly couldn't say, hey, because you didn't present yourself for an annual examination, we're going to halt your pension benefits. Actually, the Department of Insurance says we can stay payment. We don't terminate the benefits, but we can hold off payments until such time as he complies with the requirements under Section 4.1.12. So there's a difference between halting pension benefits? Terminating. And terminating. Terminating and suspending things. So that's the term I like to use. So terminating benefits, and the fact finder is the board, right? Yes. And the board would have to find that a person has, in the language of the statute, I refer to it as recovery, but what do you say the statute actually says? I believe it to, and my interpretation, Your Honor, and the normal interpretation by the boards is that the person is no longer disabled from that disability. And that's actually the intention of the statute. If you look at it in total, you look at it, he has the burden of proof of establishing the fact that he is disabled by three examinations by three doctors selected by the board. He did that, right? That was chosen. And Dr. Lanoff's opinion is very consistent with those three doctors. None of those doctors had objective findings that he was disabled. No. They merely made the determination based upon the fact that he had pain. Subjective complaints. Dr. Lanoff says that's not enough for somebody to be disabled. It's discomfort, not disability. And if any of those doctors, none of them gave a definitive diagnosis, did they? No, they didn't. They didn't, which means there wasn't. As Dr. Lanoff said. So that leads to the next question. What did the board think it was doing when in a three-to-two vote it grants pension benefits? And that's the real rub here. To the extent that it granted pension benefits, it can't say, oops, we made a mistake. We're going to take that back and now we're going to stop your, we're going to And that's the difference between the medical profession and the legal profession. The legal profession, we applied the law to the facts. The medical profession only looked at what he thought were the medical facts. And he concluded, he issued a medical conclusion. But it doesn't, that doesn't bind anyone and it doesn't comply, necessarily comply with the law. If the law says that you must make a showing that the individual is no longer disabled, I don't know that that, within that showing, it includes a showing that he was never disabled to begin with. Well, Your Honor, the intent of the law is not that in the event somebody receives a disability pension, it's res judicata any time that somebody else examines them. There are any number of things that occur. But don't we start at that position? Don't we start there and then go forward? We don't simply say we're going to revisit that very same position. We start at the position that he's receiving pension benefits now. And now we have to show that he's no longer entitled to them. But the point is, Your Honor, and case law has said, it's at the time of examination. At the time of examination by Dr. Lange. That's your strongest case for reversing the circuit court here and upholding the board's decision. I'd like to say Peacock, because I argued that case. But, Your Honor, Trenton Arrow actually has much more language. And Trenton Arrow actually sets forth the standard for this. And it also addresses the fact that these cases are intended to catch frauds, mistakes, et cetera. Now, in this case, I don't want to use it so strongly to say that the applicant was fraudulently misrepresenting facts to the doctors or to the board. To the extent it's meant to do that, and I'm asking you this question because you're very experienced in this, given the arguments that you've already made. You alluded to one. What? If fraud has occurred, why shouldn't the statute say, you know what, and the pension fund, in order to preserve its assets, we're going to allow you to recover those pension benefits that were never, that the person received, that he was never entitled to, to begin with? Actually, I'm a strong advocate that it should. But it doesn't. I know, Your Honor. And to the extent that once paid, it's over with, the question becomes, how many other cases are we going to examine and say, you know what, the pension board made the mistake from the get-go because it didn't review the medical evidence properly, and now we have this doctor who says he was never really disabled. Your Honor, if I could back up for a moment. Sure. The three doctors who examined Mr. Hoffman, they said that he suffered from pain, et cetera, et cetera. Their recommendation was back strengthening, et cetera. That was in the year 2002. In the year 2002, during that period from 2002 to 2009, his muscles in his back could have been. Dr. Lanoff says, had I been one of the three examining doctors, I would have said he wasn't disabled. Dr. Lanoff did not examine him under the original case, so his is a separate opinion. While he reviews these, he says, I don't know that that rises to the level of a disability. It's discomfort, but it's not a disability. And it's something you can easily recover from. Pardon? Is there any bony pathology here? No. Bony pathology? No. None. So this is a soft tissue injury, you're telling us? That's what we. We go back to the dichotomy between a medical determination and a legal determination. The medical determination was certainly before the board, and the board issued a legal determination. It found the individual by a 3-2 vote was entitled to disability. And now it's stuck with that. Yes, Your Honor, but we shouldn't be stuck with a bad decision, Your Honor. No. And we shouldn't be stuck with somebody who has, in fact, recovered to the point where a doctor feels that one doctor we need has found that he is no longer disabled. When we're talking about wordsmiths, you just use recovered. Yes, Your Honor. And yet I didn't see anything about a recovery. I saw medical evidence regarding the absence of a disability from the get-go. Well, if it was absent, should we have awarded, should he be entitled to a benefit, Your Honor? Yes. That's part of the decision. I think it's up to the board to make that determination. And they did, Your Honor. They did this decision, and it should be upheld. All right. I'll tell you what my problem is. Your examining doctor didn't examine the patient, did he? He didn't go through as thorough an examination as Dr. Stan was. So he's doing a medical record examination. Primarily, Your Honor. Well, if he doesn't examine him, it's totally a medical record examination. I mean, you can't call a pencil an elephant. It's a pencil. He didn't do a flexion and extension test. He didn't do an inversion-eversion test. He didn't do any of the required tests to show whether a person is disabled. But he says, based on the lack of a definitive diagnosis and the fact that there is no objective evidence that there's no disability. And how do you do that? You know, for an expert's opinion to be believed, it has to have a proper basis. Where is his basis when he doesn't do an examination of flexion and extension, inversion-eversion, and all the other tests that are needed? And let me piggyback on that. You just indicated that it was within the board's authority to halt pension benefits until the proper examinations were engaged in by the pensioner. Why didn't that happen? If what Justice Gordon has just referred to to give you concrete medical evidence that an individual is no longer disabled, then why didn't the board take that avenue to force the individual to undergo those tests and have concrete evidence that in his present state he's no longer disabled? And perhaps the board is in error, but what we do is we want a truly independent medical examination. And you'll get a chance to do that again in the next year or the next two years or the next three, whenever you decide, the board decides. However, Your Honor, during that period of time, we have the public out there yelling and screaming and complaining about the pensions, yet here clearly we have an individual that's not entitled to the benefits that we continue to pay because of the fact that we're saying the original board, and there's a different makeup, you know, made a determination by the narrowest of margins. But the clearly part is the part that I'm not so sure I buy into because the pensioner had a doctor on him. And we examined him. Who testified that the individual was still disabled. He testified consistent with what Dr. Lanoff had said in terms of what is wrong with him. He suffers from lumbar pain. Lumbar pain doesn't rise to a disability. All right, Counselor. You've had ten additional minutes. Thank you very much. We certainly allow the same to your opponent. So, Duda, you're not going to need that much time, are you? I'm not. I'm tempted to sit down. Good morning. Good morning. May it please the Court, Counsel. My name is Thomas Duda. I represent the plaintiff in this case. Obviously, the Court's read my brief, so I'm not going to go through the facts. I would only point out the length. Why don't we begin with the question of whether this is a fact question, which would trigger deference to the Board, or is it really a law question? There's no question it's a law question. And who has the duty to show that Mr. Hoffman continued to be disabled? Was it the Board or was it Mr. Hoffman? It's the Board's burden. We had the obligation to prove that he was entitled to benefits under 4-110. We did that in the year 2002, and it was not a superficial examination. It was a five-day hearing. Live testimony wasn't taken, but it was a nine-member Board. At the time that initial decision was held, it was a nine-member Board, and the final vote was 3-2, and then three of the members didn't show up for the final vote. So the suggestion that that was not well considered is not true. Oddly enough, one of the nay votes on that Board is now one of the very affirmative aye votes in the current Board, which, in my opinion, really imposes on this Court the obligation to apply the pension code as it's written. I now have a final decision. There's a vote 3-2. Thirty-five days goes by. It's a final decision. And 4-112 of the pension code expressly says how this annual exam should be handled, and the counsel didn't really use the exact language. It says, quote, Upon satisfactory proof to the Board that a firefighter on the disability pension has recovered from disability, the Board shall terminate the disability pension. The burden is to prove that the pensioner has recovered. There is no continuing obligation on the part of the pensioner to prove that he remains disabled. The burden is that he has recovered. And there's no evidence in this case that anyone, whoever is supposed to marshal the evidence, considered that question with one exception. It's amazing to me. I read these briefs. I listen to arguments. And the doctor whose opinion I would think would be the most important would be the treating orthopedic surgeon. And this is not just an orthopedic surgeon that Mr. Hoffman picked so that he could get disability benefits. This is an orthopedic surgeon to whom he was referred by Terrence Moyes, an M.D., who is the occupational physician for the district. The initial treatment was through the employer. That doctor referred my client to Dr. Beatty, who has treated him continuously from 2001 through the date of the hearing. He testified through evidence deposition at this hearing. And his testimony was that this gentleman not only remains disabled, and I'm somewhat concerned because I agree with counsel. I do a lot of these, and I do a lot with the Firefighters Union, and I'm aware of the public's concern about pensions. I would never want a firefighter collecting a pension who's not entitled to it. But what Dr. Beatty's testimony was is that he continuously, from 2001 until 2005, made various attempts to improve Mr. Hoffman's conditioning and get him back to work. And every time he reached the point he was going to make the decision, it turned out that any twisting or turning would create pain in the low back, radiating into the groin, which he testified was reproducible and identical over the years. And in his opinion, that was objective evidence because the pain complaints and the place of the pain remained consistent throughout. And his final testimony was not just that this pain was disabling, and I totally disagree that pain is not a disability. But there was no bony pathology found. There's no bony pathology. So it's a soft tissue injury. It's a soft tissue case, non-operated soft tissue case. And Dr. Beatty says that. Dr. Beatty says, if you really press me for a diagnosis, he said this three times during his testimony, if you press me for a diagnosis, my diagnosis would be lumbago. That's what he said. But the most important thing he said is, in my opinion, if this gentleman were to attempt to return to work, he would present a danger not only to himself but his coworkers, because if he has these pains radiating down his leg while he's doing strenuous activity, such as lifting an unconscious patient who needs to be transported to the evidence, he would present a threat to the community. I don't think that words of an orthopedic surgeon, I've taken a lot of their depositions, those are not words that they frequently use. But he was emphatic that this gentleman's condition is such that he presents a danger to the community. And just so it's clear, soft tissue injuries. Not all soft tissue injuries. Well, just so it's clear, soft tissue injuries do occur. They are sustained by individuals. And sometimes the only symptom that can be described by the individual is one of pain. That is true. No one doubts, no one contests that conclusion, right? No. It happens. And if there's some suggestion that his pain is not legitimate, they can do with what they did in Rhodes. And Rhodes is a case where there was evidence that the condition had improved. There were videotapes of the plaintiff being a rodeo clown and lifting heavy 55-gallon drums, which was not consistent with his low back complaints. This gentleman, really he's unemployed. His only source of income was his disability benefit. He's single. He's never been married. He lives alone, takes care of his mother. There's ample opportunity to follow and film him. He's a legitimate, it's a legitimate case. And the court's read my brief. I do think I've accurately stated the law. The first decision's final. That's it. And from that point on, there needs to be evidence of improvement. And I'm glad that counsel brought up the Tretnero case. And I don't, I really don't understand, well, actually I do understand why pension boards don't do this. What I don't understand is why pension boards don't pick a doctor to do these annual exams so that that doctor can trace the changes in the client over a period of years. And Tretnero, it was a mental case, and the board sent this man to a psychiatrist or a psychologist for annual examinations. And in the first three examinations, she stated that he was suffering from a mental disability and could no longer work. Then she testified he's improved. And she compared what her findings from her earlier exams were with these findings. Now, why don't they do that? They don't do that because then they can't control the outcome. I mean, I don't think it's at all accidental that Dr. Lanoff in this case was the examining physician and he was the examining physician in Peacock. So, Justice, so it's clear. Do you know the case? Which case? Do you know of a case where the board sought to terminate pension benefits based on a conclusion that the individual was never disabled to begin with? Well, I've never had that happen. I mean, I've had people try to do it, but I always scream about O'Brien versus the board so they don't take that approach. And I also don't think it was just Dr. Lanoff being Dr. Lanoff. Dr. Lanoff, his report, when you read his report, it's clear. I don't think this man was ever disabled. And I asked him at cross-examination, my final question was, Doctor, basically your opinion is this guy was never disabled. Yeah, that's my opinion. Well, you see, here's the problem in life. I've been through this for over 50 years. I know Dr. Beatty. I never saw a case where Dr. Beatty didn't find somebody disabled, and I never saw a case where Dr. Lanoff ever found somebody disabled. So they are who they are. They are who they are. Thank you, Your Honor. A very, very brief rebuttal, counsel. Very, very brief. We're on the precipice of making bad law here, Your Honor, and that is the fact that we are going to concur and require all pension boards, even if they made a mistake, to do it. As for the argument about safety of the firefighters, four of the members, current members, are firefighters, two of whom are disabled. They're willing to take that risk. They don't believe that this would incur or create a dangerous situation. They found that basically someone who was not disabled was receiving a benefit and has been found that this injury or the pain is not sufficient to prevent him from doing his job. Thank you very much. Just so it's clear, counsel, the only question we have before us is whether or not the evidence supports the board's decision in this case as to this annual, as to this review in whatever year it occurred and doesn't preclude future reviews. Thank you very much. Thank you. Thank you, counsel. This matter will be taken under advisement. This court is adjourned.